Good afternoon, welcome to the Ninth Circuit. We're here to hear argument for the specially scheduled case Flores v. Barr, and the issue is state appeal, and I think it's your motion, Mr. Stewart. Thank you, Your Honor. May it please the Court, I'm Scott Stewart on behalf of the United States. If I may, Judge Fletcher, I'd like to reserve five minutes for rebuttal. Okay, we'll try to keep an eye on the clock and we'll try to help you. Will do. I appreciate it, Your Honor. In this case, the District Court issued an order that undermines a critical public health measure in the midst of a global pandemic, specifically one that addresses minors. This Court should stay that order pending appeal. Given the Court's recent 2019 decision in this case relating to jurisdiction, and given the Court's order, I want to make sure to hit jurisdiction. I'd like to make sure to hit some merits points, and then I want to make sure to cover harms and equities, so I'll try to do my best to hit each of those. With respect to appellate jurisdiction, Your Honors, I think there are a number of grounds on which this Court's jurisdiction is secure. I think a central one is that the order here grants affirmative relief that directs the government to take specific actions to stop placing minor hotels and to stop using hotels generally for the Title 42 processes and to remove minors outside of hotels. It's therefore like this Court's 2016 decision in this set of cases where the Court found jurisdiction because the District Court directed the government to take specific actions. They're releasing class members, accompanying parents. That's a point that this Court emphasized as a point of distinction in its recent decision dismissing for lack of jurisdiction, because the situation in the 2019 case, the Court said it didn't direct in its operative provision specific action, but instead simply interpreted the agreement's terms. The core of this order is the determination that the agreement applies to these children. That's the first paragraph, right? The agreement applies to these children. And the rest of it is simply, and so you have to undo what you did and apply the agreement to the children, including the lawyer access parts and the transference to ORR and so on. It's just more the agreement applies to these children. I think it's different in kind here, Your Honor, and I think it's more, again, like the 2016 opinion where this Court, and this is another ground on which the Court could hang its jurisdictional hat. I think there the Court exercised jurisdiction and said we have jurisdiction under Section 1292 because the Court then exercised jurisdiction over the question whether the agreement encompassed accompanying minors at ICE family residential centers. Very similar here, Your Honor, the question there over which the Court had jurisdiction, does the agreement cover unaccompanied minors? Here, does the agreement cover minors who are in the Title 42 CDC processes? Very similar jurisdiction on the same basis in addition to the one I mentioned, Your Honor. We also have the functional modification argument that we set out in our brief, but I do think you have strong grounds under the 2016 decision and under the 2019 decision to have appellate jurisdiction here, Judge Berzon. Having noted that point, Your Honor, I'd like to move and just kind of emphasize the merits here. Our argument here, our lead argument, is that it's a straightforward matter of consent decree interpretation, contract interpretation. This Flores Settlement Agreement does not apply to minors who are in these Title 42 public health processes. Why do you think that this Centers for Disease Control order applies here at all? I know that sounds a little peculiar because everybody has thought it does. But the order says repeatedly that it's preventing the introduction of people in the United States in congregate facilities, at the border patrol facilities, and at ports of entry. Apparently the intent of this was that these people would be turned around at the border and would never go into any congregate facilities. But that isn't what happened with some group of these children. And they are now in, they are being kept in the United States. They're not being turned around. And therefore, nothing in this order says anything about they should be kept in hotels, they should be kept anywhere in particular, or anything. What's in this order that's even implicated by applying the agreement? Sure, Your Honor. I mean, again, it's the means by which we exercise custody over these minors. I don't think that the application of the order is something that's really been questioned here. But if I can directly answer your question, Judge Berzon. Because I don't think that there's anything in this order that has anything to do with what happens if the people in question are not turned away at the border, but are kept somewhere for any period of time. There's nothing in this order that deals with that. Sure, Your Honor. So the order aims for a comprehensive, systematic approach to reduce the introduction. The idea is turn away as quickly as possible at the border potential vectors of infection, of disease. Now, as a practical matter, as I know you understand, Judge Berzon, in operationalizing, it's very, very challenging. It's hard to expel folks as fast as we might like. There are different reasons why we can't do so in instances. But it's a comprehensive response. There could be situations where we can't expel as quickly as we'd like. But here's a good example. But it's not in this order. There's nothing in this order. And this order applies to persons traveling from Canada or Mexico who would otherwise be introduced into a congregate setting in a land port of entry or border patrol station at or near the United States. That's not what we're dealing with. That is those folks, Your Honor. These are folks who would be appearing at, say, a border patrol station, a port of entry, and they would spend some time in congregate care at those facilities before. But they're not. That's not what the dispute's about. They're not there. They're in these hotels. Your Honor, that's when we can't turn them immediately away. But it's a system-wide response to avoid a situation where the idea of this approach, Your Honor, is to basically beat back the infection so it can't be introduced into the United States and into the interior. Your Honor, I don't understand the intention that there is any kind of thing in this order that contradicts getting them, as the agreement says, to do after not more than three days or as soon as practically possible. Sure. License facilities. If I can jump in here, I agree with Judge Berzon's question, but I have just a practical question. As I understand it, the government has conceded that it can contain the COVID-19 problem in these congregate facilities up to 30% capacity. The plaintiffs indicate that they're only 3% occupied. If that's true, what's the problem? Why can't these children be moved with alacrity to the congregate facilities? Sure, Your Honor. I think I can answer that in two steps. First, we haven't conceded and we've expressly just claimed that up to 30% would be safe. That's the SOLOG September 17th declaration, where the OR deputy director explains, look, the 30% number was before we put in all of these, you know, this extensive set of infection protection measures and protocols to deal with this. And so she explains that. What is it then? If it's not 30%, what is it? We don't have a precise number, Your Honor. Give me a rate. Is it 10%? Is it 15%? The number I would point, Your Honor, to is its functional intake capacity is something that we've identified. And I believe, you know, the problem is, you know, you get into much more than 100 new referrals a week. And, you know, we're facing often, you know, as we note in the declarations, a 30% rate of exposure or infection that requires all sorts of intake measures. And what we want to do is basically keep this at facilities near the border to minimize the amount of transportation of exposed folks, infected folks into the interior of the country. Two other questions. First of all, according to the document that the contractors were given, 85% of the licensed facilities are at the border states. Is that not right? I'm not sure of that number, Your Honor. I apologize. It's in this document. 85% of the licensed facilities are in the border states. I don't think, I think our declaration makes clear, Your Honor, that a very large number of the available beds are in the interior. And the big amount of... Well, what's the interior? I mean, is Los Angeles the interior? Presumably it is. But it's not any further from the border than Phoenix. Your Honor, I mean, I think, again, we have here, you know, officials who are explaining that the more that you have potential possibilities of infection moving deeper into the United States without proper protocols into these congregate settings, you get precisely the risks that we're trying to avoid under the CDC order. I understand that these children are being put in hotels in Phoenix and in Houston. Those two places are not on top of the board. You know, again, Your Honor, I mean, I think what I'm trying to explain here is that, you know, look, I mean, sometimes there are movements farther from the border. But, you know, we're dealing, you know, in a world, just kind of a realistic setting where we can't expel, we'd prefer to just expel people immediately. But as a practical matter, we just can't. So we have to do the next best thing and avoid introduction into these congregate settings, which is the key focus, Your Honor, of this CDC order because it's that congregate setting. Let me interject with a question. Yes, Your Honor. I gather that the purpose of the CDC order is to keep these people from coming into the country, including these children, at all. But in order to process them, it requires that they be physically in the country for a short time. Yet there's some material in the record that we've got in front of us that tells us that if and when they get lawyers, they're often transferred out of the Title 42 into Title 8. So they're not going to be sent back to Mexico or to the Northern Triangle. Do we have anything in the record that tells us how often that happens? How much of this group of children is going to end up in Title 8 hearing proceedings instead of in Title 42, just reject them and send them out of the country? I believe some of the monitor reports give some of those numbers and I think show a fairly large number of folks subject to Title 42, Judge Fletcher. I'm not sure if those have the granularity that Your Honor is speaking to. The reason I ask the question, of course, is that if these children are going to be put into Title 8 proceedings, it's not going to be a short time. I mean, you would have a much stronger case if every one of these children was going to go back to Mexico or the Northern Triangle or some other country. Those are the primary ones in a very short time, whether it's five days or 10 days. But if you put a significant percentage of these kids who are sticking around for a Title 8 proceeding, they're going to be here a long time. And are those going to stay in the hotels too? I think at that point, Your Honor, if they're put into Title 8 proceedings, I believe that then they're transferred to ORR. I'm not aware of those being large numbers. But here's what I think is a more direct response to your point, Judge Fletcher. I think a good way to think of this in just the effort here is that say you have 1,000 folks arrive who would be covered by this order. The hope would be, absent some reason to accept that person, that you could expel all of those folks very quickly. As a practical matter, it's difficult. But let's say 1,000 folks arrive. Say 300 are infected or exposed. And as a practical matter, you can only send out 900. Now, you haven't gotten everyone who's infected. But by sending out 90%, you've reduced, presumably, the number of infected folks from 300 to 30. And that helps minimize the introduction of risk of infection into the country. That's the logic of the order. And we acknowledge it. I understand that. But I'm not at all convinced that what you're doing is complying with the settlement. There's another thing that's troublesome. And it obviously bothered your adversaries. And that is there seems to be great difficulty in allowing the family members and the lawyers to contact these children. Yet the Flores Agreement requires that there be access to counsel. What's your response to that? Because it sounds as though, I mean, we've got one declaration in the record that says that they listen to the phone calls with their parents. And say, at least in one instance, listen, if you tell your mom where you are, you can't call her tomorrow. What's going on? Sure. Sure, Your Honor. Two points. I'd say I'm not sure that there's very much in the record on that. But I would say, number one. I just gave it to you. Right. But our top line argument, Your Honor, is the legal one of the agreement does not apply here, so we don't get here. I would say, though, Your Honor. Assume the agreement applies. Assume the agreement applies. All that would support, Your Honor, would be allowance of more contact. You know, an operation. Like granting a stay as to placement and use of hotels for Title 42 processes, but just allow more lawyer access. So it would still support a stay to the key problematic provisions of the order. And the court would just say, hey, you know, look, do the following to comply with paragraph, I believe, 30, 31, or 32, I believe, Your Honor. Your argument is the agreement doesn't apply. Right, Your Honor. I understand that argument hinges on the notion that these children are in the custody of CDC, which is clearly not, because CDC is doing nothing with regard to them. But I have a question along those lines, by the way. When they are sent to the hotels, is that CBP or is that ICE that's running that? I'm having a slight problem. I'm sorry. When they are sent to the hotels, are they referred from CBP to ICE or CBP itself in charge of the hotel?  Right, so they're being referred away from CBP to begin with and to ICE. So your argument is that it just doesn't apply. So if it just doesn't apply, then the district court here has no business saying anything about them. And I guess you win at that point. But if we reject that proposition, at least on a likelihood of success basis, or even as a then, then what? Stand up and say, sure, allow the access, but don't send them to the licensed facilities. Either the agreement applies or it doesn't apply. If it does apply, then it requires that they be sent to the licensed facilities, no? Sure, Your Honor. Let me answer that. I want to do my best to save a little time for rebuttal. What I would say there is that, as we've explained in our briefing, we do comply with the expeditious as part of the prompt placement requirement in the context of this agreement. And we are providing conditions at these hotels that satisfy safe and sanitary. So if the court does conclude that the agreement applies, we are meeting both of those obligations. But wait a minute. That doesn't follow, because as I understand the agreement, and I would very care to read it, the safe and sanitary part applies to the temporary setup, usually at the border patrol facilities. And it would apply to these hotels for that 72-hour period. But the main point is that they have to be gotten out of that facility to a licensed facility. So it wouldn't matter whether the hotels were safe or sanitary. They still have to be transferred to the licensed facilities if you're following the agreement. What's the difference if they're safe and sanitary? Again, Your Honor, I think there are two separate requirements. We're saying we do meet safe and sanitary. We're also saying that we meet any prompt expeditious transfer requirement. It's not to a licensed program in all cases because we're operating in a Title 42 context. But harmonizing the Title 42 context with the agreement, we are satisfying the as expeditiously as possible transfer requirement. That's why we're doing it. I know you want to save some time. I just have a really quick question here. Yes, Your Honor. What's the difference between the minor's insurance being held in the hotel and if they were being held by a licensed facility? It seems like you're saying it's all one and the same. Is that right? No, Your Honor. The licensed facility does have different features, individualized needs assessment, things that you would expect for kind of longer-term housing of minors to care for their development. Here, Your Honor, we're only talking of an average of about five days in custody. It's more limited. They are in hotel rooms. They have amenities. So longer-term educational or needs points, I don't think we have those. So there are some differences. But the Flores Agreement does require a licensed facility, right? Eventually, a transfer, it requires a transfer out of kind of basically DHS custody as expeditiously as possible, Your Honor. What we're saying here, though, is that you don't have to, in the Title 42 context, if the Flores Agreement applies, you do have to transfer promptly in that case, but we don't need to transfer to a licensed facility because we're working to expeditiously expel somebody from the country. So, I mean, here, Your Honor, again, we have to harmonize the two. Don't worry about the time. We'll make sure you get a chance to respond. Thank you, Your Honor. You're saying there's an average of five days, but that's only an average. Some of these kids are kept in there for quite a long time. What about them? Sure, Your Honor. It's hard to say all of the reasons for why it takes longer, longer for some than others, but the goal is to move these processes as quickly as possible. The average we've kept down, sometimes it takes longer. Again, it goes back to my point about this is a broad, comprehensive, systematic response where we do the best we can, and sometimes we don't expel as quickly as we can, but, you know, we're trying, Your Honor. That's what we're saying. As a practical matter, I understand that there will be some difficulty in transitioning from where we are now with the kids in the hotels. If they're still going to be held, the order requires that they be transferred to a licensed facility. But as soon as the order takes effect and the government knows from the get-go, they're never going to go to the hotels in the first place, correct? They're just going to go straight to the licensed facility after a brief period of holding. Am I missing something? I think that's right under the district court's order unless one of these kind of exigent circumstances, situations kicks in, Your Honor. The district court allowed to address some bottlenecking. There was a, you know, you could hold up to 72 hours in a hotel, but it seems to be the clear exception to the overall rule of not using hotels under the district court's order. It seems to me that your practicality argument is really based upon your argument that intake facilities, they can't handle the numbers coming in to the licensed facilities, because that's the only thing left if they're just bypassing the hotels and going straight to the licensed facilities. Well, that's, I mean, the big problem, Your Honor, is the heightened numbers, the heightened intake at OR facilities that given the OR infection protocols and care and lower numbers, they just can't handle it. They have, again, you know, the SOLOG declaration does very well to cover it, but it's, you know, a heightened intake. I mean, we're walking a real tightrope here to get this right. There are a lot of variables, and you increase the intakes, you increase the risks, you increase the times of custody, and all of a sudden we get precisely the risks of the sort we're trying to avoid here. So that's the logic of it, Your Honor. Okay, thank you. I think Judge Berzon had a question. The district court specifically said if there was a bottoming, you could keep them for three days in the hotel. I'm sorry, Your Honor, I didn't hear the first part. The district court in her last order said that if there is a bottoming, the problem is actually you can keep them up to three days in the hotels, and also said in her original order if there's really a problem, you know, I'll go back to the independent monitor and the plaintiffs, and we'll see what happens. The concern, Your Honor, is that once we have a bottleneck, we've already got the problem that we were trying to avoid. I mean, this is, as we've described, it's a very delicate thing. You get the upticks, you get the increased spread of disease, you get some staff knocked out, and it's hard to make sure to have folks to care for these kids, and all of a sudden the dominoes start falling, and you have the real problem. This is a very difficult situation of multiple interlocking goals that we're trying to meet here, but in these hotels, you have people coming in and out all the time, the staff's coming in and out, the cleaning people are going in and out, there are other guests around, and they're apparently being transported from one hotel to another hotel, so they're driving around. It's hard to understand. Your Honor, we don't have, you know, it's not congregate care, and we don't have evidence, any concrete evidence of real harm in the hotels. That's what I'd emphasize. One other thing is that, as I read the hotel protocol, it's not true that there's one child to a room, there's one child to a bed, but if there are more than one, I gather there could be more than one child. Let me recheck on that. I can try to check on that, Your Honor. I believe there could be possibilities, I think, for example, of related children, but I can check on that. No, it's not related. I don't have that at my fingertips, Your Honor. Let me see if I can find that. Thank you, Your Honor. And if you ask to reserve some time, we'll give you a chance to respond. Thank you, Judge Fletcher. Appreciate it. We're having terrible trouble hearing you. I'm not hearing him very well. Is that any better? A little better. Not much. Let's see. How about now? It's now good. Could you make it even better? How's that? Better, okay. Better? Let me turn it up even a little. Let's try it. Turn it up as high as you can. All right. That's as high as it'll go. That's good. Thank you. Okay. I only have a few comments in response to my opponent's comments. The first is that in terms of modifying the settlement, we do not believe that the district court's order does anything of the kind. Mostly what it does is it allows accommodation for the defendants in terms of bottlenecks and other sorts of exigent circumstances, but basically says the settlement applies and you shall follow it. So in terms of jurisdiction. As a practical matter, jurisdictional problems, just as any other jurisdiction, requires us to decide the merits question of whether or not the agreement applies, right? Because if the agreement doesn't apply, then ordering it to apply is modifying it. So we're kind of in the same place however you look at it, right? In other words, their argument is that the agreement doesn't apply and to apply it. They don't use the word modify, but it's essentially that if you make it apply, you're modifying the agreement. So don't we need to decide at least that much of the legal question? Well, that was the similar situation in Flores versus Barr, in which this district court had held that the agreement applies to children who are designated for expedited removal and subject to mandatory detention. And so the idea that when a court interprets a settlement, so as to include or exclude a particular group of children, it seems that there is no modification. And the court's opinion in other cases has pretty much said that. In any event, it's not your fault, it's,  go ahead Judge Berzon. I'm sorry. Flores versus Barr, we did decide that by saying X, Y, and Z, she wasn't modifying the agreement and therefore there was no jurisdiction. So you're just working through the same material in a different guise. The bottom line is there's no jurisdiction, but first we have to decide whether in fact the agreement applied, because if it doesn't apply, then there was a modification. Well, assuming that that's the case, Your Honor, then the question becomes, does the settlement itself contemplate the children in DHS custody, would be entitled to the protections of the settlement? And we've briefed that extensively, and we think that the district court decision was sound in holding that what applies here, is which agency has the decision-making authority to decide when children are going to be detained, where they're going to be detained, whether they're going to be detained under Title 8 or Title 42. And in all cases, the record is uncontroverted that that agency is the Department of Homeland Security. So as a practical matter, if the decision to detain or the decision regarding jurisdiction is tied up with the merits, then the government's motion should be denied in either event, because the district court was right in holding that the agency that has this kind of control is the one that has legal custody pursuant to the settlement. And the DHS custody because the CDC delegated that responsibility, is that your position? Our position is that as used in the settlement,  decision-making authority of a child, and this is a concept taken over from a family law, has the legal custody of the children. And in this case, the uncontroverted record shows the DHS is calling all the shots. It's deciding whether they're detained under Title 8 versus Title 42. It's deciding where they ought to be placed. It's applying the CDC's order to facilities that are not, that the CDC's order does not talk about, as Judge Berzon points out, is limited only to ports of entry and border patrol facilities. And so what ends up happening is that DHS takes it upon itself to unilaterally decide which children it's going to send off to a license placement and which children it does not. And all this order does is to say that, yes, you're entitled to do that as much as you want, DHS, but you must also send children who you are going to hold for more than 72 hours to a license placement as this settlement requires. So the question really is whether the DHS ought to be permitted to just exercise carte blanche in deciding who it's going to send to a license placement versus complying with the settlement and then sending whomever else it wants to a license placement as it is doing now. So to send 500 children over the last month or so to license placements, we don't know how many of those it would have been required to transfer under the settlement. That's not a number that we're privy to. You know, my opponent talks about the lack of evidence of real harm in hotels, but a lot of the dearth of evidence on that is because the government holds these children essentially incommunicado. It's run volunteer lawyers out of the facilities, out of the hotels when they've tried to get in and assist these children. And so any lack of evidence as to how these children are actually being treated is due to the government's own secrecy and insularity in how it's treating these children in these hotels, essentially holding them incommunicado. Now, in terms of... What's the best evidence, Counsel, that there is enough room in licensed facilities or in foster care to treat the number of children that you are aware of in any event? There is more than enough room, Your Honor, yes. That's what the evidence shows. And where should we look for that? The declaration? Yes, the declarations have it. The independent monitors, the district court's independent monitors report talks about the depopulated facilities. The government's own juvenile coordinators have filed a number of reports in which they report that the facilities that ORR has that are licensed are about 97% unoccupied. They're depopulated. So there's plenty of room. And should the government begin bumping up against some kind of real limit on its ability to safely accommodate children in licensed placements, it's welcome to come to the independent monitor and the plaintiffs and say we have cause for using unlicensed placements. And at that point, that's a bridge we can cross when we get to it. But for the time being, there is absolutely no reason to believe that the government could not accommodate these children. In fact, if you want to look at the government's own declaration, this is the Harper Declaration at docket 12-2, page 87. This is someone who is saying, a government official who is saying currently, and this is as of September 17th, there are no minors being held in hotels as part of the Title 42 program. So when the government suggests that the sky is going to fall because these numbers are so large, I have to believe. I'm sorry, could you put me again where that is? I didn't see that. If you want to look at page 87 at docket entry 12-2, it's at the end of paragraph 2. So they're claiming that the sky is falling into focus. Yes. And even if it were, the district court's order allows ample flexibility to address that circumstance if and when it should occur. So from your perspective, we don't have jurisdiction because there's no change in the agreement, right? Correct. So I have one question to the practicalities here, and that is we know from the record that some of these children are turned around quite quickly and sent back to whatever country they came from, typically Mexico or Northern Triangle country, but some of them are transferred into Title 8 proceedings for a hearing. Do we know how many, and do we know why? We have some inkling as to how many. I believe one of the declarations talked about a number of around 500. We do not know why. This is something that the government has kept to itself. The criteria and grounds for its reclassifying children from Title 42 to Title 8 is something we are not privy to, nor has the government seen fit to inform us of what those criteria are. And again, this goes back to my point that what the government really is asking for here is to allow it to decide when it is going to transfer children and when it is not, regardless of their agreement in the settlement. Yes, there is, Your Honor. It's in the district court in Washington, D.C. presently. And what's the status of that? There is a magistrate judge's recommendation recommending in favor of class certification and in favor of a preliminary injunction on behalf of unaccompanied alien minors who are subject to the Title 42 removal process. That's only for minors, but what about for everybody else? To my knowledge, there is no class action on behalf of adults. But is that lawsuit also based on the agreement? No, it is not, Your Honor. It's based upon the Trafficking Victims Protection Act, which vests children with a right to 240 removal proceedings, which are obviously being circumvented by way of these Title 42 expulsions. So then one more question is that the agreement says that children are supposed to be moved Actually, I have two more questions. Moved to the placement under Paragraph 19 three days or five days, except in the event of an emergency or influx, in which case they should place all minors as expeditiously as possible. And is your position that that collapses into itself because as expeditiously as possible is now because there's plenty of room? In a certain extent, it does, Your Honor. As expeditiously as possible would mean if there's room, the government should place children in these license placements. In fact, the district court's order allows more leeway and time for the government to delay in providing children with a license placement than the agreement would appear to contemplate. So, again, this is another underscore, is that this order does not modify the agreement. It simply puts detail into the agreement's more general standards applicable to this specific situation at hand. Let's assume for a moment that we don't have jurisdiction because the district court's order doesn't modify the agreement. What's your position on whether we should grant an administrative stay, an additional one, for some period of time to allow the government to basically empty out the hotels and put people in the license facilities? Well, Your Honor, apparently there are either very few or no minors in the hotels currently. And to the extent that the, therefore, the stay is not necessary, even an administrative stay for that purpose. But certainly if there is going to be an additional administrative stay, this order is already now, I don't know whatever it is, a number of weeks old. And we have been unable to monitor the treatment of children in these facilities and so forth. So that if there is going to be an additional administrative stay of this order that we be permitted to carry out the monitoring functions that the government agreed to in the settlement and which the district court ordered in its order enforcing the settlement. So you would want the monitoring right while there's any stay? The monitoring and the access to the hotel. Yes. The hotels are empty now. That is to say, is the government complying with the order despite the stay? What's happening? That is not something I'm in a position to answer, Your Honor. As again, we've not been able to get any reliable information out of the government. Even their own statistics are all over the map when it comes to the number of children and where they're being held and so forth. And so we would hope through having the ability to effectively monitor the conditions and numbers of children who are currently in hotels to be able to answer questions just like that. But frankly, right now, this situation with children in hotels is sort of a black hole. The government has refused to give up information on any kind of a coherent basis regarding its treatment of these children. And in fact, as I've said before, has run out lawyers who've attempted to come in and assist the children on a pro bono basis. I have one other thing. The district court reached the question of whether the hotels were to be considered safe and sanitary. Judge Berzon, we're having trouble hearing you. The district court reached the question of whether the hotels were to be considered safe and sanitary. She said they were sanitary but not safe. Is there any reason to reach that issue? Because as I understand it, the order is there to be gotten out of the hotels. So it's really a time question whether they are going to be gotten out of the hotels. She said they can stay for up to three days. Apparently, even though she said they weren't safe. And this safety issue is really somewhat a reflection of the fact that they're not in licensed facilities. Many of the ways that she said they weren't safe is because they're not receiving the services they would receive in a licensed facility. So can we just skip that question and enforce her order? I would say yes, Your Honor. The settlement is designed to set up a bright line, which is, is the facility licensed or is it not? The safe and sanitary provision is aimed at regulating the treatment of children before they're placed into a licensed facility. So that once they're placed in the licensed facility, it's up to state licensing authorities to determine whether the facility itself meets state licensing standards, which will exceed the base standard of safe and sanitary that's required in temporary housing prior to the transfer of children to a licensed placement. Presumably, these hotels are more safe and sanitary than the border patrol places they would be held if they weren't in a hotel. Well... So, I mean, that's why I'm having trouble trying to... It seems to me that we just skip it because the order is really that they be gotten out of there, not that they stay there. Correct, Your Honor. So if we were to uphold or leave alone for the moment the district court's order, what as a practical matter happens? Do these kids go straight from the border patrol to the licensed facility or do they go through the hotel first? As a general matter, if the government... Unless the government is prepared to immediately remove them, expel them under the Title 42, they should go directly to an OR facility. Now, if the district court's order... There may be a day or two before the transportation can be arranged. Where will they be held in that meantime? The district court's order permits a brief period of hoteling in the event that the government is just simply arranging transportation. And so under those circumstances, a hotel stay is permissible, as I read the district court's order. There has never been a problem under the Flores Settlement with the government taking a child out of a licensed placement proximate to physical removal. And when physical removal is imminent, then it's permissible for them to be held in hotels. But the problem is that we're seeing children held for far longer than a few days, in some cases up to a month, in a hotel. And there's no way of justifying that as being proximate to imminent removal. Thank you very much. Thank you. Would you put three minutes on the clock, please, for Mr. Stewart? Thank you, Your Honor. Just a couple or a few quick points. I'd just like to emphasize here, Your Honor, with respect to the harms feature, I would really emphasize the multiple government official CBP, ORR, ICE declarations that we've got here that really attest to the harms, this systemic comprehensive effort to implement this order to prevent infection of COVID-19 in these congregate facilities and in our communities more broadly. The SOLOG declaration really, really details these. The district court's order, my friends on the other side's submissions, do not overcome those. I would emphasize, Your Honor... It was pointed out, and I did not notice this, that the last FARPA declaration says there are no children in hotels. Is that correct? My understanding is that that's the situation at the time, Your Honor. I don't know all the reasons for that. But again, I would emphasize that time in hotels is meant to be very quick. We've been in this kind of odd limbo for some period of time with administrative stays, Your Honor, where the agencies are gearing up to maybe they're going to need to comply all of a sudden, maybe not. So they've had to take, I think, or have taken some caution, at least in some quarters, with respect to those points. I would say just briefly on the district court... I have no idea what you're getting at. You're saying that they've been complying with the order even though they don't have to? No, Your Honor. What I'm saying is that it's hard to gear up and close down this operation. And I think they keep seeing they're on the eve of the order taking effect multiple times in recent weeks. So it's just... I think there's been some difficulty with going full speed ahead, and they're trying to look at the reality of their operations and what they need to do. I don't have any more on it than... really much more on it than that, Your Honor. Regardless of where they are, whether they're in a licensed facility or the hotel, your opposing counsel says that basically there's no information available. There's no way for them to monitor what you're doing. Is there any reason why the government should not permit and cooperate with the monitoring required by the Flores Agreement and the court's order wherever they are, in the hotel or at a licensed facility? Your Honor, we maintain our position that that requirement just does not apply here because the agreement doesn't apply. And other than that, we do provide phone access, which, you know, this is a different context. Let's just say arguendo that we don't agree and that we think it does apply. Is there any reason if the Flores Agreement applies why you cannot provide access to the plaintiffs and the monitors so that they can know what's going on? Sure. May I answer, Judge Fletcher? Go ahead. Sure, Your Honor. I mean, look, if the court holds the agreement applies, then we could comply and provide access, Your Honor. What I would just emphasize, however, is that would only call for part of the order here going into operation, and the court should still stay the parts of the order that prevent placements in hotels. But no, Your Honor, we'd ask the court to stay. Is your response to that last question telling me that the government has decided on its own that the Flores Agreement doesn't apply and, therefore, it's not going to allow access to lawyers? Is that what's going on? The agreement doesn't apply, Your Honor. That's a good faith, reasonable, strong argument. I understand that. But I'm trying to figure out why the government is not allowing access to lawyers. Because it thinks it's not obliged to? Sometimes, you know, letting people have lawyers even if they're not obliged to might be a good idea. I mean, this strikes me almost as a scoff law when there's a plausible argument. In fact, I think it's an argument you may be about to lose as to whether or not the Flores Agreement applies. And the government says, well, we don't think it applies so you don't get a lawyer. And meanwhile, we've got these kids isolated by themselves, monitored when they're talking to their mom and saying, if you tell your mom where you are, you're not going to talk to her tomorrow. There's something deeply wrong with what's in this record. Your Honor, I think you're relying on a number of hearsay statements in the record in some cases. And I think, again, this is short-term custody under a broadly granted authority to the CDC director. This is consistent with that authority. You know, I might have something better than what I've got in the record if you allowed access. Your Honor, again, you know, our position is that we are providing what is required by the law. I hear Your Honor's points, but... Finally, can I go back to my question? Where in the CDC order is there anything about custody? Any relation to custody? Your Honor, I mean, the CDC order, this is part of it. It's a broad order that says we're trying to prevent the introduction of covered persons into potential vectors of disease into congregate facilities. This is incidental to performing that order and to immediately expelling folks. We don't have to spell everything out in that document, Your Honor, with respect. With that, Your Honor, Judge Fletcher, we'd ask the court to stay. Okay, thank you very much, both sides. Thank you. The argument with respect to the stay in Flores v. Barr is now submitted, and we thank both counsel for their arguments. Thank you, Your Honor. Thanks to the court. Thank you. This court for this session stands adjourned.
judges: W. Fletcher, Berzon, M. Smith, Jr.